DISTRICT OF OREGON
**F I L E D**
December 15, 2010
Clerk, U.S. Bankruptcy Court

Below is an Opinion of the Court.

_____
TRISH M. BROWN
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re | ) Case No. 10-32098-tmb13 |
| ROBERT JOSEPH COLLINS, | ) MEMORANDUM OPINION |
| Debtor. | ) |

      This matter came before the court on the objections of Wayne Godare, the Chapter 13 Trustee ("Trustee"), and PNC Mortgage, a division of PNC Bank, National Association, fka National City Mortgage, a division of National City Bank ("PNC") to confirmation of the Debtor's proposed Chapter 13 Plan. Debtor Robert Joseph Collins ( "Debtor") was represented by Anthony V. Albertazzi and Tyler Elliott.  The Trustee appeared pro se and PNC was represented by Jesse A. P. Baker and Eric A. Marshack.

      I took this matter under advisement following the confirmation hearing held on October 22, 2010.  I have since reviewed my notes, the exhibits, the pleadings, and other submissions in the file.  I also have read applicable legal authorities, both as cited to me and as located through my own research.  I have considered carefully the oral arguments presented and have read counsels' submissions in detail. The following findings of fact and legal conclusions constitute the court's findings under Federal Rule of Civil

Page 1 - MEMORANDUM OPINION

Procedure 52(a), applicable in this proceeding under Federal Rules of Bankruptcy Procedure 7052 and 9014.[1] To the extent any findings of fact constitute conclusions of law, they are adopted as such. To the extent that any of the conclusions of law constitute findings of fact, they are adopted as such.

## I. FACTS

Debtor filed this Chapter 13 on March 17, 2010. Debtor received a Chapter 7 discharge in Case No. 09-34374-rld7 on October 2, 2009, making the Debtor ineligible for discharge in this case. 11 U.S.C. § 1328(f)(1).

Debtor scheduled a single parcel of real property, a residence located on Woodside Loop in Bend, Oregon ("Woodside Property"). I previously held that for purposes of confirmation the value of the Woodside Property is $230,000.00. Debtor apparently lives in a rental home and pays rent of $1,200 per month.

The parties agree that as of the filing date, the principal balance owing on PNC's Note, secured by a first trust deed on the Woodside Property was $543,391.99, with prepetition arrears of $59,222.34. The Debtor scheduled a second debt owing to PNC in the amount of $55,956, secured by a "second mortgage"[2] on the Woodside Property. Debtor scheduled no priority debt. He scheduled a single unsecured claim in the amount of $50,000 in favor of the trustee in his Chapter 7 case. That claim is based on an alleged preferential transfer in the earlier case.

The Woodside Property has been a rental home since January 2008. Debtor currently receives rental income of $1,100 per month from the Woodside Property. Debtor owns no other real estate investment property at this time.

Debtor's Plan dated March 17, 2010, proposes to cram down PNC's first lien to the value of its collateral, $230,000, and to make payments to PNC of $1,350 monthly with interest to accrue at the rate

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. § 101-1532, and to the Federal Rules of Bankruptcy Procedure ("FRBP"), Rules 1001-9037.

[2] More likely a deed of trust, but no proof of claim was filed on this debt, so the nature of the lien is unclear.

Page 2 - MEMORANDUM OPINION

of 5.5 percent per annum. This amount exceeds the rental income for the Woodside Property by $250 per month. Because this is the Debtor's only investment property, he contends he needs it in order to keep his foot in the door as a real estate professional, an activity he has been engaged in, over 30 years.

With respect to the junior lien held by PNC, paragraph 13 of the Plan provides:

> "Pursuant to §506, and within 60 days after confirmation, debtor(s) will file an adversary proceeding or motion to void the junior lien held by National City Mortgage[3] in the real property located at 60385 Woodside Loop in Bend, OR. Entry of the Order Confirming Plan is not res judicata with respect to this lien. Any Judgment or Order voiding such lien shall be void and such lien shall be reinstated if the case is dismissed or converted and debtor(s) do not receive a discharge pursuant to § 1328." (Chapter 13 Plan Dated 03/17/10 at 4).

However, Debtor proposes to amend this provision to delete the phrase "and debtor(s) do not receive a discharge pursuant to § 1328." Thus, the Debtor proposes both a cram down of a lien and a "strip off" of a second lien in his Plan.

## II. DISCUSSION

A. <u>Objections to Confirmation</u>

The Trustee objects to confirmation of Debtor's Plan for two reasons. First, he argues that because the Debtor is not eligible for a discharge, he cannot cram down a secured claim without the consent of the affected creditor pursuant to § 1325(a). PNC joins in this objection. Second, he contends that because Debtor is not eligible for a Chapter 13 discharge, he may not use § 506(a) to strip off a wholly unsecured lien. when he is not entitled to a discharge in a Chapter 13.

PNC raises a number of additional objections to confirmation of Debtor's Plan. As a preliminary matter, it contends that Debtor is ineligible for relief under Chapter 13 because his unsecured debt exceeds the statutory limits set forth in § 109(e). In addition, it argues that its claim is secured only by real property that is Debtor's principal residence and is therefore protected from modification by § 1322(b)(2) and, further, that the plan improperly attempts to both modify a claim under § 1325(a) and provide for payment of that claim beyond the life of the plan.

---

[3] As noted in the opening paragraph, National City Mortgage is the former name of PNC Mortgage.

Page 3 - MEMORANDUM OPINION

### 1) Debtor's Eligibility for Relief under § 109(e)

At the time of filing, § 109(e)[4] provided:

> "Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $336,900 and noncontingent, liquidated, secured debts of less than $1,010,650, or an individual with regular income and such individual's spouse, except a stockbroker or a commodity broker, that owe, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts that aggregate less than $ 336,900 and noncontingent, liquidated, secured debts of less than $ 1,010,650 may be a debtor under chapter 13 of this title."

Debtor scheduled only $50,000 in unsecured debt. However, the liens against the Woodside Property exceed the value of that property by $369,347.99 [$543,391.99 + $55,956 - $230,000.00]. PNC contends that this amount should be added to the scheduled unsecured debt to determine the actual amount of unsecured debt owed by Debtor and to determine Debtor's eligibility for Chapter 13 relief.

"[A] vast majority of courts, and all circuit courts that have considered the issue, have held that the unsecured portion of undersecured debt is counted as unsecured for § 109(e) eligibility purposes." In re Smith, 435 B.R. 637, 648 (9th Cir. BAP 2010) citing In re Scovis, 249 F.3d 975 (9th Cir. 2001). However, Debtor received a Chapter 7 discharge in 2009. While that discharge did not affect the liens against his real property, it did relieve him of any personal liability for the undersecured portion of the debt secured by those liens. "A discharge in bankruptcy affects only a debtor's personal liability on a debt. Valid, perfected liens that have not been disallowed or avoided survive the bankruptcy discharge of the underlying debt." In re Johnson, 386 B.R. 272, 281 (Bankr. D. Id. 2008). Accordingly, as of the date of the Chapter 13 filing the only unsecured debt "owed" by the Debtor was the $50,000 judgment entered against him in the Chapter 7 case. Debtor is, therefore, eligible for Chapter 13 relief and PNC's objection on that ground is overruled.

### 2. Debtor's Right to Cram Down PNC's Claim

Section 1322(b)(2) of the Code allows a debtor to "modify rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal

---

[4] The debt limitations for unsecured debt was increased to $360,475, effective April 1, 2010.

Page 4 - MEMORANDUM OPINION

residence . . . ." As noted, PNC contends that its claims are secured only by real property that is Debtor's principal residence, a contention Debtor denies. However, even if the Woodside Property is not his principal residence, Debtor must treat PNC's secured claims in accordance with the requirements of § 1325(a)(5).

Section 1325(a)(5) provides:

> (5) with respect to each allowed secured claim provided for by the plan—
>   (A) the holder of such claim has accepted the plan;
>   (B)(i) the plan provides that—
>     (I) the holder of such claim retain the lien securing such claim until the earlier of—
>       (aa) the payment of the underlying debt determined under nonbankruptcy law; or
>       (bb) discharge under section 1328; and
>     (II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law; . . . or
>   . . . .
>   (C) the debtor surrenders the property securing such claim to such holder . . . ."

PNC has not accepted Debtor's proposed Plan and Debtor does not intend to surrender the collateral securing PNC's claim. Debtor is not eligible for a discharge in this case. Accordingly, both Trustee and PNC argue that the Plan can be confirmed only if it provides that PNC retains its liens, or at the very least, PNC's first priority secured lien, as determined in accordance with non-bankruptcy law, is paid in full."

I agree. PNC holds a claim secured by Debtor's real property. The fact that the value of that secured claim may be less than the amount of the underlying debt does not change PNC's status as the holder of an allowed secured claim provided for by the Plan. Accordingly, absent PNC's consent, Debtor must either surrender the collateral or provide for full payment of the underlying debt, determined under non-bankruptcy law. However, this is not what Debtor proposes. The Plan provides for payment of $230,000 plus interest on debt that exceeds $543,000.00. This Plan cannot be confirmed. I will deny confirmation and give Debtor 14 days to file an amended plan.

Even if Debtor were to provide for full payment of PNC's debt, I would not confirm the Plan. I do not find the Woodside Property is necessary for an effective reorganization. Debtor proposes to pay

Page 5 - MEMORANDUM OPINION

$250 more to PNC monthly then he receives in rent. Moreover, there will be costs associated with owning the Woodside Property as a rental. Debtor's 2009 federal tax return reflected a loss of $11,329 on the Woodside Property and did not include any payments to PNC.[5] Once payments to PNC of $1,350 per month are included, the annual loss on the Woodside Property would increase to approximately $23,329.00. (Income of $13,200, less real estate taxes of $4,340, less payments to PNC of $16,200, less depreciation of $15,939). Even without depreciation, there will still be an annual loss of approximately $7,390.00. I do not give weight to the Debtor's hope to keep this property as a foot in the door to the real estate market. Accordingly, I cannot find the Woodside Property is necessary to this Debtor.

Because I find that the Debtor's plan fails to comply with § 1325(a)(5), I need not address the additional objections raised by Trustee and PNC.

###

cc: Anthony V. Albertazzi
    Jesse A. P. Baker
    Eric A. Marshack

---

[5] Debtor is in default on his obligations to PNC and is contractually due on the loan for October 1, 2008.

Page 6 - MEMORANDUM OPINION